Your Honors, this case on the docket 2-14-0924, Dave Eakins v. Hanna Cylinders, LLC, Appellee. Arguing on behalf of the Appellant, Ms. Christina M. Winters. Arguing on behalf of the Appellee, Ms. Gerald T. Brandweiler. May the culprit proceed? Yes, Your Honor. So you may proceed when you're ready then. If I may approach? Sure. Mr. Granwell, Justices, may it please the Court. This is not a complicated case. We are here because the trial court essentially made two mistakes. The first mistake occurred in January of 2014 when the trial court denied David Eakins' motion for summary judgment because they thought that there was a genuine issue related to what the parties intended by the employment contract. The second mistake that happened in this case occurred eight months later when the trial court granted Hanna's motion for summary judgment. So I think probably the easiest way to go about discussing this case is to just address those two issues that are before this Court. The argument behind David Eakins' motion for summary judgment is very simple. David Eakins was not an at-will employee. He had an employment contract with Hanna Cylinders. That contract was not ambiguous. The contract clearly and simply stated that David would get an annual salary, that he would get two automatic bonuses, and that his minimum term of employment was 24 months. That is not ambiguous. The contract did not state anything that had to do with any performance standards or guidelines that was necessary for David to remain employed there for those 24 months. It could have, but it didn't. That's correct, Your Honor, and that's actually one of our key arguments is that if there was any ambiguity in this contract, which we think there isn't, it should certainly be construed against the drafter, who in this case is Hanna Cylinders. You're correct. They could have absolutely put into the contract, in order for you to get your salary, in order to stay here for 24 months, you need to ship inventory on time. You need to make sure that... Is it your position, then, that any time there's an employment contract, there's just basically no reason to terminate someone? It's our position that in every contract there is the covenant of good faith and fair dealing. So, of course, if there was criminal activity involved, I think that would be a different story. But, yes, if it is a not-at-will employment situation, then, yes, we don't think that they can be fired for any reason. Because if that were the case, every employee ever in the history of this country would be an at-will employee, and that's simply not the case. It's very clear that there are many situations where employers hire employees to work under the terms of a contract. And, you know, the terms of that contract, the law in Illinois is very clear that you need to take it on its face when it's not ambiguous. And, certainly, that's what we have here. And I think that... Wasn't there an allegation, though, of basically not good faith on behalf of your client? Made by the other side? Right. That's what I meant. Yes, there is that allegation. However, to that I would counter that. Certainly, if he was an at-will employee, they could fire him for any reason. They could fire him for not living up to his performance standards. They could fire him for not liking the color shirt he's wearing. I mean, they could do it for whatever reason they want. But, in this case, we have an employment contract that is clear. There are no performance terms in this contract. You talked about, you know, some element of good faith in every employment contract. If you make the allegation that that was not complied with, doesn't that generate a material issue effect? And that's a very good point. Yes, it can. And, certainly, that is what the trial court found when they denied Mr. Egan's motion for summary judgment was that very issue. So, cutting to the heart of it, why isn't that a material issue effect? For purposes of David Egan's motion for summary judgment, that is not a material issue effect because it's our position that the contract is not ambiguous. If the contract was ambiguous, then the court would obviously need to hear parole evidence. They'd need to find out, you know, what was the party's intentions behind entering into this. Obviously, Tana Silvers argues that there were performance standards. My client says, you know, the opposite. And I think that one of the things that needs to be looked at is the fact that, you know, David Egan was offered a job at a competitor. In response, he told Tana Silvers, I'm resigning. I'm leaving now. And Tana Silvers then said, wait, wait, wait, wait, wait. We're going to convert your at-will employment into a contract employment. And here's this contract that we drafted, and it's setting forth these specific terms. Your position is very simple. It's a guarantee. You're saying that it was 24 months. It didn't contain any exceptions, any performance standards, anything at all. Precisely. So then you're saying that there would have to be some general case law, something else that would intervene and get them off the hook. Correct, yes. And I believe that the two cases that we relied upon quite heavily, Virudi is one of them, and it's 145-ILAP-3D-931. And the second one is PCORA, and that's 322-ILAP-870. Both of these cases are actually almost identical to the case that we have before us today. They're both second decision cases. I'm sorry, second district cases. They're both decided on the employee's motion for summary judgment, and the facts were very identical in the sense that they were guaranteed a length of employment for, I think in both cases it was two years, and the employer fired them ahead of time. So then the employee in both cases filed a motion for summary judgment. The trial court granted it, and the second district affirmed it because, you know, at the trial court level, or because the employer tried to make the same argument in this case, that in every contract there are implied performance standards. And the second district in both of these cases says you cannot do that. You cannot read terms into an employment contract that simply aren't there. Certainly, you know, if the employer had added these terms, you know, it would be a no-brainer. Of course, he didn't live up to it. He could be terminated for those reasons. But those simply were not present in these two case law that I'm citing, and they're not present in the case before you today. Anything other than a criminal act, you guys, is okay? Yes. I mean, that would be, you know, a criminal act takes it into a different realm. Obviously, if he really did do something criminal, he'd be arrested. He'd be in jail. There would be a whole variety of reasons why he couldn't, you know, continue with the terms of his employment. And then certainly, you know, like I said, there is the implied notion of good faith and fair dealing to the extent that you hope nobody's going to steal from you or come in and shoot up the people at your company. I mean, things like that obviously fall into a completely different realm. What we have before here is a simple contract that is very plain, very plainly stated. It's not complicated. There's no legalese in it. It says you're guaranteed a salary. You get two bonuses, and you're going to be here for 24 months. Speaking of the bonuses, I mean, your opponent argues that in the brief that there's these automatic bonuses in some way show that your client was promising to stay, but the company wasn't necessarily promising to keep him. And I did notice that argument in their brief. And to that, I would say that that really doesn't make sense. You know, why would my client give up a different job to only be the one person bound by this contract? Because essentially what Canna Cylinders is saying is David Eakins is the only person bound by this contract. I mean, that's kind of the crux of that argument. And certainly, that doesn't make sense. Why would anybody give up a good-paying job moving along to stay at a place where he's the only one bound? And then also with that argument, we all know that for a contract to be an enforceable contract, it has to be mutually binding on both sides. To say, well, no, he's the only one that's going to be bound by this 24 months just really doesn't make sense. What about if your client just decided not to show up for work or came in once a week? It's not a criminal act. He's not destroying the property. He's not doing anything that is necessarily impeding the business. He just doesn't show up. According to your argument, then he should be able to get his salary, right? Yes, because he's an employee. Because there is an employment contract, we are bound by that employment contract. And because there are no specific performance requirements written in it, then yes, I do think that he would be entitled to get his pay in that sense. If he was an at-will employee, totally different story. Wouldn't he be in breach of the contract if he didn't show up? If he was an at-will? So basically you're saying that if I get an employment contract with a company and they say we're going to pay you a million dollars a year and we guarantee it for a year, and then the next day I go, hey, I got this million dollars and I just don't show up for the rest of the year, I get paid? Is that what your argument is? And then they don't have a breach of contract claim against me? Well, in that circumstance, I think that lends itself more to the employee checking out and essentially maybe moving on to another job. I guess I'd have to kind of know more of the background. Part of a breach of contract, your claim is alleged breach of contract, correct? Right. And an element of breach of contract is that your client stands ready, willing, and able to perform the contract. Correct. Which is to work for the company for the two years. Right. So, I mean, if he doesn't show up for work, he can't make that claim, can he? There's no mutuality of promises. He's not doing anything. But in this case, we do have a client or an employee that does show up every day. I know that, but the hypothetical from Justice Hudson was, you know, what if someone just didn't show up? Where does this take us? Because you're disputing that the employer has a right to terminate for cause. You're saying that they don't. There's no performance standards engrafted into this contract. So, therefore, there's no termination for cause. And I'm saying, what if a person doesn't even show up? There has to be exceptions, right? Yes, I think you're correct that there are exceptions. And obviously, you know, we can stand here and speculate about a whole bunch of different scenarios that might lead to that. But what we have in front of us today is a very specific instance where my client did show up to work. He did what was required of him under this contract because there were no specific performance terms built into it. Isn't that bringing us all back to the same point that if you agree that he could be terminated for cause, isn't that inherently a material issue of fact? Yes, and actually, I was going to bring you to the next point. So, assuming that the trial court was correct in denying Mr. Egan's motion for summary judgment, and, of course, your justices could certainly find that this morning, if you find that, then certainly that material question of fact that precluded granting David Egan's motion for summary judgment most definitely should preclude granting Hamm Cylinder's motion for summary judgment because that's exactly what happened is eight months later, the trial court somehow ruled that there was no longer a material issue of fact. And, you know, it's kind of hard to reconcile how those two rulings can make sense. I don't think that you can have it both ways here. And then certainly, you know, again, if so, Hamm Cylinder's main argument is that they can fire him for cause at any time. But if we're talking about cause, the case law is pretty clear that the issue of cause is an issue of fact. When cause is at issue, that is not something that should be decided under a summary judgment motion. Are these cross motions for summary judgment? Yes, Your Honor, I would argue that they are. Generally, if parties file cross motions for summary judgment, they are agreeing there is no question of material fact, correct? Yes. But I think in this instance, in David Eakin's motion for summary judgment, we're not asking you to look beyond the contract. If that's all you do is kind of look at the one issue, is there a contract, is it ambiguous, and we think that it's not, then the only question left is a matter of, well, what happens upon that breach? As it relates to Hannah Sinclair's motion for summary judgment, they're asking for a much more, I guess, in-depth approach to the motion for summary judgment because what they're essentially asking you to do is to read terms into this employment contract. And we think that's kind of a step too far. So our argument before you today is twofold. You know, the trial court made a mistake because in our motion for summary judgment, they read too much into it. The judge actually thought, you know, I think that there is an issue as to what the parties meant by this contract. What was their intention? But then eight months later, he went ahead and found that that wasn't a material issue anymore. So, again, it's very hard to reconcile how... Does it matter here, for purposes of Justice Birx's question, that these motions were filed eight months apart? For purposes of jurisdiction? Well, no. You know, the question that usually when motions, cross motions for summary judgment are filed, they're sort of filed at the same time or relatively at the same time, raising the same issues and saying, we agree, here's the facts, I'm right, I'm right. Right. But here, there was a substantial amount of time, and they really are asking for two different remedies. Would that be a fair statement? Yes, I would agree with that, yes. They were filed eight months apart. I mean, obviously, they still are relative to similar issues, which I think obviously gives this court jurisdiction to hear both motions. It was a question of our jurisdiction. Okay, perfect, okay. So, again, you know, I can't stress enough that Hannah Cylinders are the people that drafted the contract. They did it so that David Eakins would not go work for a competitor. To say that he's the only person bound by the contract, it doesn't make sense just as a practical matter, but then as a matter of law, we know that contracts have to be mutually binding. So that argument fails. And, again, I can't also stress enough that Mr. Eakins was not an at-home employee. I think that's kind of the crux of this. If he was an at-home employee, then certainly he could be fired for any time, and Hannah Cylinders would not be breaching the contract by letting him go. However, in this case, the contract is very clear, and because of that, we are asking the court today to reverse the judge's ruling when he denied David Eakins' motion for summary judgment, and also reverse the trial court when he granted Hannah Cylinders' motion for summary judgment. Okay, you all have a chance to reply tonight. Thank you. Good morning, Your Honors. I'm Jerry Brimel for Hannah Cylinders, and may it please the court. Your Honors, the fundamental question of law in this case is whether an employer may terminate an employee who cannot or will not do the job for which he's hired. Let me just interject a quick threshold question. Are you agreeing that the employee here was not an at-will employee? There was a term of a contract. We, for the purposes of this appeal only, for the purposes of our motion for summary judgment only, we have conceded that there was a 24-month employment contract. Okay. Only for purposes of our motion for summary judgment. Okay, I understand. For purposes of this argument. Certainly, if the court were to consider whether the trial court should have granted Mr. Eakins' motion for summary judgment, we would contend that the two years bound Mr. Eakins and not us. But for purposes only of our motion for summary judgment, we would say that there is. But you also concede that the statement here, there's a minimum term of employment of 24 months. There were no particular performance standards or other standards that was engrafted into that term, correct? The piece of paper did not specifically say you must do one, two, three, four, and five. Right. However, in Illinois, every employer-employee relationship, the employee implicitly promises that he has the skill and ability to do a particular job and that he will use that skill and ability. The law in Illinois is 140 years old to that point. That's Parker v. Platt. Every common law jurisdiction, and I cited some on pages 9 and 10 of my brief, finds that that is the law. The secondary sources, Williston Contract, Amateur, the Restatement of Contracts, all agree to that point. And nothing really in Baruti or Pokhara say that that is not. It retracts from that general proposition. And also, you are arguing, I think if you must, that the employer always has the right to terminate the cost, correct? That is correct. Part and parcel of your argument. That's correct. And I think you cited a couple of cases that indicate that. But would you also agree that if you're talking about making determinations to whether the termination is justified for cause, that's sort of a fact question, isn't it? It is, Your Honor. And in this case, the purpose of summary judgment, as Your Honor knows, is to determine whether there is an issue of fact for trial. That's summary judgment law 101. And you argue termination for cause, but there was no issue on cause. Was there? Any hearing on cause? There wasn't. Well, Your Honor, we put forth several statements from Mr. Eakins showing that he had breached his contract. We put forth statements showing where Mr. Eakins said that inventory was out of control, overtime was out of control. I've gotten ahead of myself. As an initial matter, as a threshold matter, we have a statement by Mr. Eakins in a verified admission to Paragraph 4 of our counterclaims, sort of set forth the duties and responsibilities of the plant manager. Those duties and responsibilities supervise all the daily operations of the plant, make sure orders ship on time, make sure the inventory levels are at acceptable levels. Your client knew of these duties, correct? Your client knew that that's what they wanted in a plant manager? They did, as did the plant manager. Okay, I'm just saying, your client knew that. Your client hired the guy and then saw him work for four months or whatever before he was going to leave for another company. That's right. And he was clearly hired on an Andrea Atwill contract for the first contract. Yes, he was. And he was set up in the contract. That's right. And then your client took the step of saying, I know this guy, I've seen what he's done, I know what a plant manager is supposed to do. I'm going to write a letter that doesn't have any performance clause in it, and in essence, you're conceding, at least for purposes of your summary judgment, guarantees him payment for 24 months. That's correct. So how does he get terminated for cause? He gets terminated for cause because even though the one-page letter of agreement doesn't spell out each and every little duty that he's got to perform, the parties agree what those duties were. Where's that agreement? That agreement, your Honor, is paragraph four. That section's in my supplemental appendix, page A2 of my supplemental appendix. These are the duties of the plant manager. I'm sorry, but where is that referenced in that employment contract? It's not referenced in the one-page letter. But what is referenced in the one-page letter is we are hiring you to be the plant manager. Implicit in that is that you will do the duties of plant manager. According to whose review? The employees or the employers? The employers. And, again, where is that in this very simplistic contract? I mean, I understand where you're trying to go, but the point is you wrote it. You didn't put anything that you're now saying this is implicit. I mean, I'll agree that there's some element of good faith implicit in every contract. But where is it in that contract that we're referring to this definition of plant manager? Why not another definition? Because once you go outside the four corners of the contract, isn't that requiring you? Not when Mr. Eakins does not put forth any evidence to the contrary. I mean, the purpose of summary judgment is to determine whether there's a fact. Mr. Eakins had an affirmative duty to put forth facts contesting what his responsibilities were. He didn't do that. His responsibilities aren't implicit in, excuse me, aren't in that contract. No, the contract just says plant manager. Were Pecora and Berruti incorrectly decided? No, Your Honor. But Berruti is a very, first Pecora, I want to distinguish Pecora because the only issue with Pecora is, is this a 24-month contract or not? Berruti considered the issue of, Pecora is only time. Well, factually it did mention in Pecora that the person was fired because they weren't meeting their sales obligations. I think that was Berruti, Your Honor. I think it also says it in Pecora, but we'll leave that to the side. So Berruti clearly says that since they didn't put a performance clause in the contract, that isn't part of the deal. Why doesn't that apply here? Why doesn't that apply here? Because in Berruti, we're dealing with a situation where we've got a salesman. He's doing the normal duties of a salesman. He's selling product. He is acting as a salesman should. He was fired for not growing his sales in Berruti. In this case, we're dealing with a person who destroyed value, who under his tenure, overtime expenditures just explode. Inventory expenditures just explode. He admits, I have had issues with respect to overtime. I admit my part in this. All of these fall under the broad category of performance. Obviously, in the minds of the company, he was not adequately and competently performing his job. Correct? In the minds of the company. And Mr. Ekins admitted that in his letter to Mr. Bradley. Summarize that letter for me. Or quote the letter. Okay. He says, overtime, I acknowledge my issue with respect to overtime. He says, these individuals who, by the way, he's got a duty to manage, I'm having trouble managing them. And they're not doing what I tell them to do. Even though he's got the duty to. Well, how is that his fault? He's saying, I have issues with my employees. They're not doing what I'm telling them to do. So that means that his performance is substandard? It's not an issue of, it's an issue of responsibility. He's responsible for making sure that the people under him do their job. He says, inventory is out of control on multiple occasions. So the trial judge agreed that you could, in granting your motion, implicit was that he was terminated for cause, right? Yes. Without any kind of a hearing? Well, when you don't, that's correct. There was no hearing. However, when Mr. Ekins doesn't produce facts to contradict what we've put forth, he doesn't put facts that deny anything in his September 10th letter. He doesn't put facts forth that deny any of the objective metrics that we cited in our motion. You know, he forfeits that right to argue that there's a dispute of material fact. His argument is, there's nothing, there is no dispute about anything. I have a guaranteed contract. My performance is irrelevant.  I understand that's his position. And that's why I started off. The fundamental question of law is whether an employer may terminate an employee who cannot or will not do his job. This is not a case, just to clarify, and I ask the hypothetical, and I'll backtrack a little bit. This is not a case where he wasn't showing up for work, correct? He, we will concede that he actually physically showed up to work. Was it the job? He didn't destroy the plant property. He didn't commit any criminal acts, right? He did destroy some plant property, but that's, that's. Well, that's not the basis. Yeah, that's not the basis of our motion. He did not commit criminal acts. You're saying that his, again, his job performance was not what the company believed it should have been, and therefore the company had the right to discharge him. In essence, that's what you're saying, right? That's correct. Okay. Isn't that awfully similar to the failure to grow my sales? No, Your Honor. Failure to grow, in Berruti and Pokhara, you know, again, the salesman was, was not destroying value. He was acting like a salesman. He was selling product, maybe not at the level that the company wanted him to do, but he was actually selling product. In this case, we're dealing with a complete failure to manage. We're dealing with, again, inventory is out of control. He was responsible for making short orders ship on time, and when you look at the objective metrics, we're talking about backlogs that are growing from 25 to 41 percent, and there's no denying, Mr. Eakins doesn't deny that. Well, he doesn't deny the fact. No, he doesn't deny the fact, and he doesn't. Does he admit it's all my fault? I, like, just torpedoed this company? He doesn't. He won't admit that it's his fault, but he will admit that it's his responsibility, and we're dealing with a contract case here, and fault and responsibility are very different, different questions and different terms. Weren't there submissions raised as to whether or not he had enough time to rectify these problems when they were brought to his attention, or, in the alternative, whether the owner of the company was basically adding to his woes here at the company? Mr. Eakins, in his letter, in an e-mail after he was terminated, says, well, this stuff just came out of nowhere. It's not my doing. Yet he also says, in that same e-mail, in the same breath, these problems have been going on since May. Now, he knows that it's his responsibility, his duty to manage the plant and fix these problems and get out in front of them, and he doesn't. Yeah, but how do we announce a decision in your favor without implicitly engrafting or drafting performance standards into the ruling? The contract, you admit, contains nothing and contains no reference to performance standards whatsoever. No, it doesn't. You're asking us to engraft performance standards into that agreement, correct? I don't believe so, Your Honor. I'm sorry if I — Well, there's nothing in the 24 months that says anything about performance standards, does it? So where does this come from? It comes from the responsibilities of the position of the plant manager. In your mind? And in Mr. Eakins' mind, too. In his deposition, he testifies as to what his responsibilities were. He says, you know, the quality had to be of good standards, correct, yet in his letter of September 10th, he says, I am not happy and have not been happy with where we stand on quality. He says, I have to do these things successfully. He says, I have to manage overtime spending and keep it at an acceptable level. He admits that's a responsibility. Okay, so he admits to all of these responsibilities, but he does not explicitly acknowledge that he's malperformed his responsibilities, does he? He does that in his September 10th letter. He does that in some e-mails back in — earlier on in the year. He says inventory is out of control. And he says that's my fault. I mean, to say that I'm in charge of inventory and inventory has gone up doesn't necessarily mean that I'm not doing my job. There could be a variety of reasons out there. It's your burden on a motion for summary judgment, not his. We understand. But when we put forth facts and he doesn't contest them. The fact that inventory went up equals not necessarily basis for firing for cause. You have to do more than show, okay, inventory went up. My obligation to monitor inventory, inventory went up. That does not equate to basis for cause. Well, it's not just monitor but manage. Monitor, manage, oversee, whatever verb you want to use. How does that equate to cause? Well, let's take a look then. Let's step back from inventory and let's look at overtime. When he says, I acknowledge my part in this. Even though there are other factors, I acknowledge my part in this. Let's take a look at the forecast where he says I've got a hit forecast and he's not able to hit forecast. So he's saying, in essence, he could be doing things better. But if you look at the Baruti and the Bacora cases, yes, I think you can make a logically compelling argument that there has to be some standards that even your opposing counsel acknowledges. Somebody destroying the property, committing criminal acts. Yes, I suppose you can make the logical and legal argument. We can read a termination for cause into any contract. But that's extreme circumstances. What you have here is you're saying the company isn't doing as well as it could be doing. The Fed, the plaintiff acknowledges that and you're saying that's enough where the contract never said anything about performance. That's a tough sell. I'll just leave you with that thought. All right. The issue is who breached first, correct? You're talking about terminating for cause. That's right. And I think maybe we're getting hung up on this terminating for cause thing because there are some cases that say that you can't terminate for cause. For cause is a bad word. So let's just say they're suing for breach of contract. They're making the allegation that they were ready, willing, and able to perform the contract. You're saying he breached the contract. That's why we fired him. That's correct. So that's where we stand, really, is not necessarily for cause. It's where the contract was breached. That's exactly what it is, Your Honor. So when we're looking at the contract, we have to look behind the four corners of the contract. What you're saying is for the implied terms, and some of these implied terms are not hitting forecast and raising the inventory and things of that nature. That's right, and that's what everybody understood the job to be. Anything else? Do you wish to make just a final summation? Your Honor, we ask that you affirm the circuit court's grant of summary judgment for the reasons in the brief and the reasons discussed here. Thank you very much. Do you wish to offer a reply? Yes. Justices, you cannot look behind the four corners of a contract on a motion for summary judgment. You can't. If you do that, you're creating material issue of fact. If you're reading terms into the contract, if you're saying these are the things that he should have done, that's all fine and good, but that's something that we should have a hearing about. We should have evidence presented as to what was the intention of the parties. It's not proper to read these terms into it on a motion for summary judgment. The only thing that we have to determine is, is there a material issue of fact? And for purposes of their motion for summary judgment, certainly there is, because opposing counsel just stood here for the last 15 minutes and talked all about cause and things like that, and those are definitely questions that the trial court should hear. So if you're inclined to say that, again, if you're inclined to say that it was proper for the trial court to deny Mr. Eakin's motion for summary judgment, certainly you really can't find that it was proper for them to grant Hannah Smillinger's. It just, you can't reconcile that. Why would it be proper for us to say that the trial court, why should we say that the trial court erred in not granting your client's motion for summary judgment? Because it's our opinion that the contract is not ambiguous. I don't think it's subject to any other interpretation other than the five or six sentences written on the page. It's very, you know, the case law is clear. If it's not ambiguous, you take the terms for their plain meaning. So what is the plain meaning of this contract? Their argument is your client breached first. That is their argument, and I would argue that that certainly isn't the case because there's no performance terms in here. I would agree with the other side that he breached first. If it said you need to keep inventory down, you need to keep overtime at a minimum, you need to do all these things. If it had said all those things, you would be absolutely correct. My client would have breached first. But those terms are not in the contract. You can't read into them that there are those terms in the contract, and because of that, the contract is not ambiguous for our purposes, for the purposes of our motion for summary judgment. The only question is, what does this four document, four corners of this document say, and was it breached? In our opinion, yes, it was breached by Hannah Cylinders because they're the only ones that violated the terms of this contract, not the implied terms that you can read into the contract, but the actual terms of this contract. Hannah Cylinders is the one that breached. So it's pretty simple. I think it gets complicated if you start reading terms into the contract that don't exist, but if you take it as it is, very simple. Is there a contract? Yes, there is. Everybody has acknowledged it. Was it breached? The terms of the contract, yes, by Hannah Cylinders. So for those reasons, you know, we're asking that this court reverse essentially both decisions of the trial court. And remand? Or just enter summary judgment for you? We would like you to enter summary judgment for us. Well, even if we entered summary judgment in your favor, would it necessitate a remand? Because there's some issue with damages, isn't there? Yes. Because there's some allegation that your client mitigated damages by getting another job. Right, right. We don't have any of that information, do we? I believe it's in the briefs. I don't have that in front of me at this moment. I apologize for that. So I have nothing further than that. Thank you both very much. Thank you. We are adjourned.